UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARTIN DENESSE                                    CIVIL ACTION

VERSUS                                            NO: 03-3280

ISLAND OPERATING COMPANY,                         SECTION: J(4)
INC. and PHIL GUILBEAU
OFFSHORE, INC.

**ORDER**

Before the Court is the **Renewed Motion for Partial Summary Judgment Seeking Indemnity From Anadarko Petroleum Corporation Filed on Behalf of Third Party Plaintiff Phil Guilbeau Offshore, Inc. (Rec. Doc. 87)** and **Anadarko Petroleum Corporation's Cross Motion for Partial Summary Judgment on Phil Guilbeau Offshore, Inc.'s Demand for Indemnity (Rec. Doc. 92)**.  Both motions were opposed.  Oral argument was requested, and the motions were set for hearing on May 24, 2006.  However, this Court cancelled oral arguments because it had previously heard oral arguments on these same issues, finding that a repeat of oral arguments was unnecessary.

**Background:**

This lawsuit alleges that Martin Denesse ("Denesse"), a medic/clerk employed by GPM/Medic Systems, Inc. ("GPM"), injured his back in 2003 during a personnel basket transfer from Anadarko Petroleum Corporation's ("Anadarko") Eugene Island 306A structure to the M/V MIA MALLOY.  Denesse sued Island Operating Company, Inc. ("Island") and Phil Guilbeau Offshore, Inc. ("Guilbeau").

Island was the operator of the platform and provided the crane operator pursuant to a contract it had with Anadarko.  Guilbeau owned and operated the M/V MIA MALLOY.  After the suit was filed, Guilbeau filed a third party claim against Anadarko seeking contractual indemnity pursuant to the Master Time Charter Agreement entered into between Anadarko and C&G Boats, Inc. ("C&G"), wherein  C&G was to provide vessels and Anadarko was to direct the vessels.  GPM, who employed Denesse, provided services to Anadarko and/or Island as an independent contractor.  C&G hired Guilbeau to provide vessel services to Anadarko.

This is the second motion for partial summary judgment filed by Guilbeau; it filed a similar motion back in April of 2005, which this Court denied because material issues of fact precluded summary judgment.  Guilbeau, now, has filed a renewed motion for partial summary judgment on the same issue requesting a ruling that Anadarko is obligated to defend and indemnify it based on the indemnity provisions in the master time charter agreement. In its cross motion for partial summary judgment, Anadarko argues that Guilbeau, which is not a party to the agreement, is not entitled to indemnity from Anadarko because Guilbeau cannot assert indemnity rights belonging to C&G and because the agreement does not provide indemnity for claims asserted by Denesse under the facts of this case.

**The Issues:**

The parties agree that the agreement in question is governed by federal maritime law.

The indemnity language of this agreement is unique.  It was a form contract apparently drafted by the Anadarko contracts manager, who is not a lawyer, but with assistance from an in-house attorney.  Before it was signed, a copy was sent to C&G, who requested several changes that were made before the agreement was finalized and signed by both parties.

Section 903 of the Master Time Charter Agreement contains the indemnity provisions.  In general, C&G as "Owner" agrees to hold harmless and indemnify Anadarko as "Charterer" for all claims asserted by any person for injury or damage, "regardless of fault."   However, there is a different indemnity provision that applies in the case of Anadarko's personnel "in the event the Vessel is Moored."   In that situation, section 903(a) provides:

> Charterer [Anadarko] shall "be responsible for and hold harmless and indemnify" Owner [C&G] against Claims by or in favor of or incurred or sustained by Charterer's Personnel arising during any time which the Vessel is Moored "regardless of fault."

(Rec. Doc. 87, Exhibit 1, section 903(a)).  Both parties agree that for Guilbeau to be entitled to indemnification from Anadarko under this provision, it would have to be shown that (1) Denesse was "Charterer's Personnel" under the agreement, (2) the M/V MIA MALLOY was moored during the time of the incident, and (3)

Guilbeau was the "Owner".  Only the first and third requirements are addressed in detail in this opinion.[1]

The parties dispute whether Denesse should be considered "Charterer's Personnel".  This term is defined in the agreement as:

> Charterer's employees, Charterer's other contractors (including but not limited to their employees and other persons provided by Charterer's other contractors), and other persons, *provided by Charterer to perform services directly related to performance of the Master Agreement*.

(Rec. Doc. 87, Exhibit 1, section 101(e)).  The parties dispute whether the qualifying phrase "provided by Charterer to perform services directly related to performance of the Master Agreement," applies only to "other persons" or applies to the entire list.  Guilbeau argues that this phrase qualifies only "other persons", while Anadarko asserts that the qualifying phrase limits all three categories of personnel who are listed in section 101(e).  In other words, Guilbeau claims that Denesse, whose employer contracted with Island, who in turn contracted with Anadarko, does not have to have performed duties directly related to the master time charter agreement.  Anadarko, on the

---

[1]     Anadarko does not directly dispute whether the vessel was moored in its cross-motion for partial summary judgment; however, it addressed that issue (arguing that Guilbeau had presented no factual evidence to show the vessel was moored) in its opposition to Guilbeau's first motion for partial summary judgment, which it incorporated as opposition for purposes of Guilbeau's renewed motion. (Rec. Doc. 43). This Court determines that the vessel was, in fact, moored during the time of the incident.  This Court agrees with Anadarko's senior contract manager who testified that any vessel positioned next to another for personnel basket transfer would have been "moored", under the terms of the agreement.  (Rec. Doc. 87, Exhibit 3, Depo. of Clayton Evans, p. 34).

other hand, argues that Denesse's services must be directly related to the vessel charter agreement for him to be considered "Charterer's Personnel".  Anadarko claims that Denesse was a platform based medic who only boarded the vessel once and whose duties were unrelated to the work performed by the vessel.  In essence, Anadarko argues that Denesse was an incidental passenger and, as such, his services were unrelated to the vessel's work.

This dispute turns to one of interpretation of comma placement.  Anadarko states that because the comma immediately precedes the qualifying phrase, it modifies all three categories in the list.  See Alea London Ltd. v. 65 Bog, Inc., 2006 WL 1030247, *6 (E.D. Pa. April 19, 2006).  Guilbeau argues that the presence of a comma after the phrase "other persons" is not important and is likely a grammatical error because it does not appear in the preceding definition which is otherwise virtually identical.  Alternatively, Guilbeau argues section 101(e) is ambiguous and, as such, should be construed against Anadarko (as the drafter) and in favor of indemnity for Guilbeau.

Section 903(a) also requires that Guilbeau must be considered as the "Owner" to be entitled to indemnity from Anadarko.  The agreement expressly defines "Owner" to mean "C&G Boats, Inc." and, insofar as indemnity is concerned, includes "Owner and Owner's Affiliated Companies, and each of their respective associates, directors, officers, employees, servants, agents, and insurers." (section 101 (i)).  Guilbeau is not named

in the agreement, and does not fall into any of the categories plainly listed in the definition of "Owner".  Instead, Guilbeau is a subcontractor of C&G, a category not listed as an "Owner" as defined in the agreement.  Nonetheless, Guilbeau argues it qualifies as "Owner" based on a rather strained syllogism, which goes as follows:

- Guilbeau was a subcontractor of Owner (C&G)[2];

- Owner's subcontractors are Owner's Personnel[3];

- Owner's personnel are "servants, employees and agents of the Owner"[4] (Guilbeau cites section 101(d), but it should be

---

[2]     Section 101(i) states:

> C&G Boats, Inc.  Any provision in this Master Time Charter Agreement relieving Owner of liability or responsibility or indemnifying or insuring Owner shall be deemed to provide for identical relief, and/or indemnification, and/or insurance, as applicable, in favor of Owner and Owner's Affiliated Companies, and each of their respective associates, directors, officers, employees, servants, agents, and insurers.

[3]     Section 101(d) provides:

> the captain, master, officers and crew of each Vessel, Owner's employees, Owner's subcontractors (including but not limited to their employees and other persons provided by Owner's subcontractors), and other persons provided by Owner to perform Owner's obligations under this Master Time Charter Agreement and the applicable Work Order.

[4]     Although Guilbeau incorrectly cites section 101(d) for this proposition, the correct section is likely section 603, which states:

> Owner shall be an independent contractor.  The Owner's Personnel shall be and remain at all times, in every respect and for all purposes, the servants, employees and agents of Owner and shall not be deemed "borrowed servants" of Charterer.  Charterer shall have no direction or control of Owner or Owner's Personnel except in the results to be obtained.

section 603);

• Guilbeau reasons it is a "servant, employee, or agent" of Owner C&G; and

• Anadarko's indemnity obligation to Owner C&G extends to "employees, servant and agents" of the Owner (section 101(i));

Anadarko points out that the clear, unambiguous, and exclusive list of indemnified parties does not include independent contractors or subcontractors (like Guilbeau). Anadarko further asserts that Guilbeau, as an independent contractor, is a not an "employee, servant, or agent" of C&G because section 603[5] does not expand the scope of the phrase "employees, servants or agents" to include independent contractors;  that section only concerns the relationship between Anadarko and C&G.

**Legal Standard:**

Summary judgment is appropriate if the pleadings, discovery, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069,

---

[5]     Section 603 states:

> Owner shall be an independent contractor.  The Owner's Personnel shall be and remain at all times, in every respect and for all purposes, the servants, employees and agents of Owner and shall not be deemed "borrowed servants" of Charterer.  Charterer shall have no direction or control of Owner or Owner's Personnel except in the results to be obtained.

1075 (5th Cir.1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. Id. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. Id. "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." Weber v. Roadway Exp., Inc., 199 F.3d 270, 272 (5th Cir.2000) (citations omitted).

**Discussion:**

Under federal maritime law, an indemnity provision in a maritime contract generally is enforceable, even if for one's own negligence, provided the indemnity provision is clear, express, and unambiguous. See Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir.1981); Foreman v. Exxon Corp., 770 F.2d 490, 498 (5th Cir. 1985). Unless the indemnity clause is ambiguous, the maritime contract should be read as a whole and its words should be given their plain meaning. Weathersby v. Conoco Oil Co., 752 F.2d 953 (5th Cir. 1984) (citing Lirette v. Popich Bros. Water Transport, Inc., 699 F.2d 725, 728 (5th Cir.1983). Courts "should construe indemnity clause[s] to cover all losses 'which reasonably appear to have been within [the parties'] contemplation.'" Kemp v. Gulf Oil Corp., 745 F.2d 921,

924 (5th Cir.1984) (quoting <u>Corbitt</u>, 654 F.2d at 333). In other words, indemnity provisions should not be interpreted to impose liability for losses that are not expressly within the terms of the agreement or are not reasonably inferred from the language of the agreement.  <u>Corbitt</u>, 654 F.2d at 333. Furthermore, "express notice is required where a party seeks to shift his contractual liability to indemnify a third party."  <u>Id.</u>  Interpretation of the terms of a contract is a matter of law. <u>Weathersby</u>, 752 F.2d at 956 (citing <u>City of Austin v. Decker Coal Co.</u>, 701 F.2d 420, 425 (5th Cir.1983), <u>cert. denied</u>,464 U.S. 938, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983)).

Based on the plain and unambiguous language of the charter agreement, it is clear that Guilbeau is not entitled to indemnity from Anadarko for two main reasons. First, section 101(i) of the agreement does not expressly include C&G's subcontractors or independent contractors in its definition of "Owner" for purposes of indemnity.  This definition is specific and unambiguous. According to the Fifth Circuit's decision in <u>Corbitt</u>, this Court should not interpret the agreement to impose liability when such is not expressly stated.  The parties could easily have included independent contractors and/or subcontractors in this definition of "Owner" for purposes of indemnity; however, they chose not to do so.  This Court, therefore, gives the words of the agreement their plain meaning and declines to infer that the parties intended something that they chose not to expressly include.

Next, and perhaps more importantly, Anadarko does not owe indemnity to Guilbeau because Denesse is not "Charterer's

[Anadarko's] Personnel" as required by the indemnity provision in section 903(a) of the agreement and as defined by section 101(e) of the agreement.  This Court views section 101(e) as clear and unambiguous, and finds that Denesse does not qualify as Charterer's Personnel because his duties were not directly related to the performance of the master time charter agreement. Specifically, Denesse was a medic who boarded the M/V MIA MALLOY only once when the accident occurred; he did not perform any services related to the vessel or to the master time charter agreement between C&G and Anadarko.  Rather, he was aboard the vessel merely as a passenger who was transported to and from Anadarko's platform, where his duties were performed.  See Solet v. Galaxy Marine & Transportation Inc., 1995 WL 5692222, *2 (E.D. La. 1995).

The Court is not persuaded by Guilbeau's suggestion that section 101(e)'s qualifying language ("provided by Charterer to perform services directly related to performance of the Master Agreement") applies only to "other persons" and not to the entire list of personnel in the paragraph.  Because a comma was placed before this limiting language and because the preceding listings were separated by commas, the limiting language applies to the entire list.  See, Alea London Ltd. v. 65 Bog, 2006 WL 130247, *6 (E.D. Pa. Apr. 19, 2006).  Guilbeau asserts that this comma placement is a mistake; however, the Court is not persuaded. Both C&G and Anadarko reviewed the agreement before signing it; each party had the opportunity to make changes to it, yet the comma placement here remained unchanged.  The paragraph is not

ambiguous and, given its plain meaning, does not lead to absurd results.

Thus, because Denesse did not perform services directly related to the M/V MIA MALLOY or the master time charter, he is not considered "Charterer's Personnel" and Guilbeau is not entitled to indemnity from Anadarko.  Accordingly,

**IT IS ORDERED** that the **Renewed Motion for Partial Summary Judgment Seeking Indemnity From Anadarko Petroleum Corporation Filed on Behalf of Third Party Plaintiff Phil Guilbeau Offshore, Inc. (Rec. Doc. 87)** should be and is hereby **DENIED**.  **IT IS FURTHER ORDERED** that **Anadarko Petroleum Corporation's Cross Motion for Partial Summary Judgment on Phil Guilbeau Offshore, Inc.'s Demand for Indemnity (Rec. Doc. 92)** should be and hereby is **GRANTED**.

New Orleans, Louisiana this 1st day of June, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

11