UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARTIN DENESSE                          CIVIL ACTION

VERSUS                                  NO: 03-3280

ISLAND OPERATING COMPANY,               SECTION: J(4)
INC., ET AL

### ORDER AND REASONS

Before the Court is Defendants Anadarko Petroleum Corporation's and Phil Guilbeau Offshore, Inc.'s **Motion for Summary Judgment to Enforce Settlement Agreement (Rec. Doc. 156).** Anadarko Petroleum Corporation ("Anadarko") and Phil Guilbeau Offshore, Inc. ("Guilbeau") seek to enforce a settlement that was allegedly confected during a private mediation.  This motion, which is opposed, is set for hearing on February 13, 2008 with an evidentiary hearing.  However, upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that there is no need for an evidentiary hearing and that Defendants Anadarko Petroleum Corporation's and Phil Guilbeau Offshore, Inc.'s motion should be denied.

### Background Facts

This lawsuit alleges that Martin Denesse ("Denesse"), a

paramedic/clerk employed by Medic Systems, Inc., a Division of Grasso Production ("Grasso"), injured his back in 2003 during a personnel basket transfer from Anadarko Petroleum Corporation's ("Anadarko") Eugene Island 306A platform to the M/V MIA MALLOY. Denesse sued Island Operating Company, Inc. ("Island"),[1] Phil Guilbeau Offshore, Inc.,[2] and Anadarko.

According to Anadarko and Guilbeau, during the mediation and after approximately five rounds of offers, rejections, and counteroffers between Plaintiff and all three Defendants (Island, Anadarko, and Guilbeau), Plaintiff's counsel made a separate settlement offer to Anadarko and Guilbeau of $250,000,[3] which was accepted. A "Memorandum of Settlement Agreement" was drafted by counsel for Guilbeau, reviewed by all parties, with any party being allowed to amend, revise, remove, or add any term or condition. Counsel for Plaintiff requested the inclusion of a provision that Plaintiff agree to pay Intervenors (Medic Systems and Signal) $37,500 from the proceeds of the settlement, which was done. Counsel for Anadarko, counsel for Guilbeau, counsel for Denesse, and Denesse himself signed the agreement.[4] The

---

[1] Island was the operator of the platform and provided the crane operator pursuant to a Master Service Agreement it had with Anadarko.

[2] Guilbeau owned and operated the M/V MIA MALLOY.

[3] Anadarko was to pay $100,000 and Guilbeau was to pay $150,000.

[4] See Memorandum of Settlement Agreement, Defendants' Exh. 1.

agreement was not signed by anyone on behalf of Intervenors, however.  The following day, counsel for Plaintiff (Mr. Hall) sent correspondence to Intervenor's counsel.  Anadarko and Guilbeau argue that in the letter, Mr. Hall acknowledged, in two places, that Plaintiff had settled his claims with Anadarko and Phil Guilbeau for $250,000.

Therefore, according to Anadarko and Guilbeau, settlement was bound between these Defendants and Denesse regardless of the situation involving Intervenors; i.e., the settlement was not contingent or conditioned upon Plaintiff's reaching an agreement with Intervenors.  Had that been the case, Plaintiff or Plaintiff's counsel would have included some sort of notation or limiting language within the Memorandum of Settlement Agreement that would have clearly stated that the entire settlement agreement was subject to approval and acceptance by Intervenors. No such language was included.  Therefore, according to Anadarko and Guilbeau, a valid and enforceable settlement agreement exists between them and Denesse.

In opposition, Denesse argues that the settlement was never finalized, a fact which is apparent from within the four corners of the document and by the affidavit of counsel for Denesse and the mediator.[5]  The settlement agreement itself places obligations and responsibility on Intervenors, who are asked to

---

[5]  In the mediator's affidavit, the mediator states that he communicated to Anadarko and Guilbeau Denesse's settlement offer "with the explanation that it was subject to formal approval by Medic as intervenor."

accept $37,500 in settlement of claims against Anadarko and Guilbeau.[6]  Furthermore, Intervenors are asked to agree to defend, indemnify, and hold harmless Anadarko and Guilbeau.[7] According to Plaintiff then, the assent of the Intervenors is required.  And the fact that Intervenors never agreed to the proposed settlement renders it unenforceable.

### Discussion

The Fifth Circuit regards a settlement agreement as a contract and courts are instructed to enforce them as they would a contract.  Kelly v. Bayou Fleet, Inc., No. 05-6871, 2007 WL 2903229, *2 (E.D. La. Oct. 2, 2007).  When presented with a settlement agreement and asked to enforce it, a court must first determine if a binding agreement was reached and, if so, what the agreement provides.  Id. at *2.  "Compromise agreements are legally favored, and the party seeking to establish the invalidity of a compromise agreement has the burden of proof." Talks v. ERHC Energy, Inc., No. 06-952, 2008 WL 62269 (W.D. La. Jan. 2, 2008) (citing Dimitri v. Dimitri, 809 So. 2d 481, 485-86 (La. App. 4th Cir. 2002).

---

[6]  Intervenors' current intervention approximates $150,000 with additional exposure for unpaid medicals that would well exceed the total of the $250,000 offered.  Denesse notes that Plaintiff would not have agreed to accept $250,000 if the entire amount would go to the Intervenors.

[7]  Denesse also points out that the defense, indemnity, and hold harmless portion of the settlement agreement was added by Anadarko and Guilbeau.  This provision is an essential element of their offer to pay $250,000––and without Intervenor's agreement to dismiss, it is unlikely that Anadarko and Guilbeau would have paid the settlement proceeds.

4

For a compromise agreement to exist between the parties, there must have been proper acceptance of an offer.  Id.  "The meaning and intent of the parties to a written instrument, including a compromise, ordinarily is determined from the four corners of the instrument, and parol evidence may not be admitted to explain or contradict the terms of the instrument." Talks v. ERHC Energy, Inc., No. 06-952, 2008 WL 62269 (W.D. La. Jan. 2, 2008) (citing Dimitri v. Dimitri, 809 So. 2d 481, 484 (La. App. 4th Cir. 2002).

However, when a party to a compromise disputes the scope of the settlement agreement, this may raise factual issues "regarding whether the unequivocal language of the instrument was intended to be truly unequivocal."  Id. citing Dumas v. Angus Chemical Co., 742 So. 2d 655, 661 (La. App. 2d Cir. 1999).  Such latitude is granted only in the presence of some "substantiating evidence" of mistaken intent.  Id.  "The extrinsic evidence must demonstrate either that the releasor was mistaken as to what he was signing even though fraud was not present, or that the releasor did not fully understand the nature of the rights being released, or did not intend to release certain aspects of his or her claim." Id. citing Dimitri, 809 So. 3d at 485 (finding that the plaintiff proved by extrinsic evidence that he did not intend to sign the settlement agreement that would fail to fully pay for his medical expenses, and where the plaintiff alleged that the insurance adjuster told him to sign the release form in order to have his medical bills paid).  In the absence of extrinsic

evidence, settlement agreements are evaluated under the traditional rules of contract analysis and shall be enforced as written.  Id. citing Dumas, 742 So. 2d at 661.

Denesse has shown that his intent in signing the settlement agreement included an understanding that settlement was conditioned on acceptance of the agreement by Intervenors.[8] Defendants dispute this position.  Therefore, this Court may consider extrinsic evidence about the true intent of the parties.

The questions to be answered by the Court are: (1) whether the mediation resulted in a written settlement agreement between Denesse and Defendants (Anadarko and Guilbeau); (2) whether the consent of Intervenors (Medic Systems and Signal) was required for the settlement agreement to be finalized; and (3) whether counsel for Plaintiff's letter constituted an acknowledgment of the finalized settlement agreement.

This Court determines that the consent of the Intervenors was required, as the language of the agreement clearly states that it is "in full and final settlement of all claims of Mr. Denesse and Intervenor" (emphasis added).  As a result, absent the consent of the Intervenors, the settlement agreement is unenforceable.  Moreover, the affidavit of the mediator confirms that parties' intent that the settlement was conditioned upon approval by the employer/compensation carrier.  No such approval

_____

[8] Approval of the third-party settlement by the employer/ carrier is required so that Plaintiff does not waive the right to future medical benefits under the LHWCA.  See 33 U.S.C. 901, et seq.

6

has been given as of this date.  Accordingly,

**IT IS ORDERED** that Defendants Anadarko Petroleum Corporation's and Phil Guilbeau Offshore, Inc.'s **Motion for Summary Judgment to Enforce Settlement Agreement (Rec. Doc. 156)** is hereby **DENIED**.

New Orleans, Louisiana, this 13th day of February, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE